Case 2:19-cv-00323   Document 24   Filed on 08/11/20 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
August 11, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES SCHORSCH, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-323 |
| | § | |
| GENE MILLER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff James Schorsch is a Texas inmate appearing *pro se* and *in forma pauperis*. He originally filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. On January 24, 2020, the undersigned issued a Memorandum and Recommendation (M&R) to dismiss this case with prejudice. (D.E. 12). Plaintiff has subsequently filed an amended complaint, asserting additional § 1983 claims as well as a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A).

Plaintiff's amended complaint, like his original complaint, is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The M&R is **AMENDED** to include the following recommendations: (1) Plaintiff's retaliation claim be **RETAINED** against **Dr. Isaac Kwarteng** in his official capacity for injunctive relief only; (2) Plaintiff's ADA claim be retained against the **Texas Department of Criminal Justice (TDCJ)**; and (3) Plaintiff's

1 / 16

claims against the remaining defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

The undersigned will order service on **Dr. Isaac Kwarteng** and the **TDCJ**. The undersigned **VACATES** the portion of the M&R recommending that the dismissal of this case count as a strike under 28 U.S.C. § 1915(g).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently confined at the McConnell Unit in Beeville, Texas. Plaintiff's allegations arise in connection with his current housing assignment.

Plaintiff originally sued the following McConnell Unit officials in this action: (1) Assistant Warden Gene Miller; (2) Warden Richardson; (3) Assistant Warden Daniel Fernandez; and (4) Senior Practice Manager Tanya Lawson. (D.E. 1, 5). Plaintiff claimed that Defendants' failure to enforce his special medical housing restriction constituted deliberate indifference to his health and safety in violation of Plaintiff's Eighth Amendment rights. Plaintiff sought injunctive relief in the form of preventing prison officials from violating his "prescribed medical housing."

The undersigned conducted a *Spears*[1] hearing on December 11, 2019. In a Memorandum and Recommendation issued on January 24, 2020, the undersigned construed Plaintiff's Eighth Amendment claim as a "failure to protect' claim and recommended that Plaintiff's complaint be dismissed with prejudice for failure to state a claim for relief and/or as frivolous. (D.E. 12, pp. 6-9). The undersigned further recommended that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g). (D.E. 12, p. 9).

Plaintiff filed objections to the M&R, reiterating that prison officials at the McConnell Unit have continuously violated his special housing restriction since his arrival at the unit on January 30, 2018, by placing in his cell general population inmates with no handicap conditions. (D.E. 14, p. 2). Plaintiff further stated that, since the day of the *Spears* hearing, his special housing restriction has been removed. (D.E. 14, p. 4). Plaintiff primarily objected to Magistrate Judge Libby's characterization of his claim as a "failure to protect" claim. (D.E. 14, p. 4). He argued instead that his deliberate indifference claim "is about the intentional interference with a prescribed special medical housing restriction." (D.E. 14, pp. 4-6).

On April 1, 2020, District Judge Nelva Gonzales Ramos issued an order directing Plaintiff to file an amended complaint so that he could present additional facts to support the deliberate indifference claim he seeks to raise. (D.E. 16). Plaintiff filed his amended complaint on May 4, 2020. (D.E. 19). Plaintiff named as defendants in his amended

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

complaint Assistant Warden Miller, Practice Manager Lawson, and Dr. Kwarteng. Plaintiff seeks injunctive relief.

The undersigned conducted a second *Spears* hearing on June 10, 2020. The following representations were made either at the *Spears* hearing or in Plaintiff's amended complaint (D.E. 19). Plaintiff has ulnar nerve damage to both hands and arms. Plaintiff's condition has caused his fingers to atrophy, and he has muscle damage in his hands. Plaintiff is only able to use two fingers and his thumbs. Plaintiff's disability impacts his ability to shake hands or grasp an object. (D.E. 21, p. 3). Plaintiff, however, can feed himself and brush his teeth. Plaintiff is fully mobile and has no conditions affecting his lower extremities.

Due to his condition, Plaintiff was given a medical restriction in 2013, which required him to be placed in special housing with those inmates having similar medical conditions. In 2013, pursuant to Program Statement 4.01, a doctor provided Plaintiff with a "Special housing needs" restriction which was intended to prevent him from being housed with general population inmates who do not have "like medical disabilities." (D.E. 19-1, p. 1; D.E. 21, pp. 5-6).

Plaintiff alleges that from the time he arrived at the McConnell Unit in January 2018, the security staff frequently placed inmates without like medical disabilities in Plaintiff's cell. The first such inmate was placed in Plaintiff's cell on February 12, 2018. (D.E. 21, p. 5). On October 15, 2019, a "psych offender" was placed in Plaintiff's cell. (D.E. 21, p. 6). Plaintiff filed an emergency grievance with Practice Manager Lawson, which was denied. (D.E. 21, p. 13).

On October 25, 2019, Plaintiff was called into Assistant Warden Miller's office. Plaintiff complained to Assistant Warden Miller that his cell mate had a "psych special housing" which is not the same as Plaintiff's "physical special housing." (D.E. 21, p. 14). Practice Manager Lawson told Assistant Warden Miller that only offenders with "communicable diseases" should have special housing. (D.E. 21, p. 15). Plaintiff alleges Assistant Warden Miller informed Plaintiff that he did not care about Plaintiff's lawsuit, which had just been filed in this Court, and that he would make sure Plaintiff no longer retained his special housing restriction. (D.E. 21, p. 15). Practice Manager Lawson also reportedly communicated to Plaintiff that he was losing his special housing restriction due to his filing of grievances and this lawsuit. (D.E. 21, pp. 24-25).

Plaintiff further alleges that on October 31, 2019, Dr. Kwarteng called Plaintiff to the infirmary. (D.E. 21, p. 15). Dr. Kwarteng told Plaintiff that he agreed with Practice Manager Lawson and that, due to his complaints against Defendants, Plaintiff's special housing restriction would be removed. (D.E. 21, p. 15). Plaintiff's special housing restriction was subsequently removed.

On December 4, 2019, another "psych offender" was placed in Plaintiff's cell late at night. (D.E. 21, p. 16). This offender was brought in after he had been in an altercation with another inmate. Plaintiff was housed with this "psych offender" for about six hours before he was moved again. Since that evening, Plaintiff has not been housed with any other inmates. At the time of the July 10, 2020 hearing, Plaintiff was living by himself. (D.E. 21, p. 16).

Plaintiff testified that he could not identify any inmate at the McConnell Unit who had a medical condition like him. Thus, he believes that he should have a cell by himself. (D.E. 21, p. 10). Plaintiff testified: "They shouldn't put somebody in the cell. It's like you're putting a lion and a lamb in there together. The lion's going to eat the lamb." (D.E. 21, p. 10).

Plaintiff has constantly been in contact with and filed several grievances with Defendants Lawson, Kwarteng, and Miller, who initially sided with Plaintiff that his special housing restriction was being violated. However, these defendants eventually refused either to answer Plaintiff's complaints or to advise the security staff to stop violating the restriction. Plaintiff proceeded to file grievances against Defendants. Defendants then told the security staff that Plaintiff did not have a special housing restriction.

Plaintiff has physical impairments and is substantially limited with respect to his physical capabilities. According to Plaintiff, Defendants acted in their official capacity by interfering with or denying Plaintiff accommodations for his special housing needs. Plaintiff believes he benefits by being eligible for special housing due to his disability. When asked at the *Spears* hearing how he would benefit from having the "special housing needs restriction" in place, Plaintiff indicated that he was frustrated by having "something different" when he had been in a cell for so long by himself. (D.E. 21, p. 8).

Plaintiff seeks injunctive relief in the form of reinstating his special housing restriction and ensuring that TDCJ employees adhere to the restriction. Plaintiff testified that TDCJ would be in the best position to grant him his requested injunctive relief.

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

## IV.  DISCUSSION

### A.  Plaintiff's § 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

#### (1)  Deliberate Indifference

Plaintiff claims that Defendants have acted with deliberate indifference claim by intentionally interfering with his special medical housing restriction. An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. "Even proof of gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)).

Plaintiff's alleges that: (1) pursuant to Program Statement 4.01, a doctor provided Plaintiff in 2013 with a "Special housing needs" restriction which prevented him from being housed with general population inmates who do not have "like medical disabilities"; (2) from the time Plaintiff arrived at the McConnell Unit in January 2018, the security staff frequently placed inmates without like medical disabilities in Plaintiff's cell; (3) the first such inmate was placed in Plaintiff's cell on February 12, 2018; (4) on

October 15, 2019, a "psych offender" was placed into Plaintiff's cell; (5) on December 4, 2019, another "psych offender" was placed in Plaintiff's cell late at night; (6) Plaintiff was housed with this "psych offender" for about six hours before he was moved again; and (7) since December 4, 2019, Plaintiff has not been housed with any other inmates.

Plaintiff's allegations, taken as true, fail to suggest that he has been subjected to a substantial risk of serious harm. Plaintiff provides no allegations to suggest that any inmates placed in his cell since 2018 have caused him physical harm or have threatened him with physical harm. Rather, his allegations reflect that on periodic occasions, other inmates have been placed in his cell for short periods of time before being moved to other cells. Other than mere speculation, Plaintiff offers no specific allegations to suggest that he is at risk of substantial harm or that Defendants acted with the requisite deliberate indifference to such risk of harm when placing other inmates in his cell.

It is true that placement of inmates not having similar physical conditions as Plaintiff violated his special housing restriction provided to him in 2013 under Program Statement 4.01. However, to the extent that Plaintiff claims that Defendants violated Program Statement 4.01, such claim fails to state a constitutional violation. *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014) ("A prison official's failure to follow prison procedural rules does not, without more, give rise to a constitutional violation."); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process if constitutional minima are nevertheless met).

Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Defendants be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### (2) Retaliation

Liberally construed, Plaintiff claims that Defendants removed his special housing restriction in retaliation for Plaintiff filing this lawsuit against them. A prisoner's First Amendment right of access to courts includes the right to seek redress through an established prison system. *See Jackson v. Cain*, 864 F.2d 1235, 1248-49 (5th Cir. 1989). Prison officials may not retaliate against a prisoner for exercising this right. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct. *Id.* at 1165 ("an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate") (citations omitted).

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is

the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Id.* Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

In this case, Plaintiff alleges that: (1) Plaintiff has filed several grievances with Defendants, who initially sided with Plaintiff that his special housing restriction was being violated through the placement of inmates in his cell; (2) during a meeting led by Assistant Warden Miller on October 25, 2019, Practice Manager Lawson told Assistant Warden Miller that only offenders with "communicable diseases" should have special housing; (3) Assistant Warden Miller informed Plaintiff that he did not care about Plaintiff's lawsuit and that he would make sure Plaintiff no longer has his special housing restriction; (4) Practice Manager Lawson also communicated to Plaintiff that he was losing his special housing restriction due to his filing of grievances and this lawsuit; (5) on October 31, 2019, Dr. Kwarteng told Plaintiff that he agreed with Practice Manager Lawson and that, due to his complaints against him, Practice Manager Lawson, and

Assistant Warden Miller, Plaintiff's special housing restriction would be removed; and (6) Plaintiff's special housing restriction was subsequently removed.

Plaintiff's allegations, accepted as true, suggest that he exercised his constitutional right to file this lawsuit and that, but for his decision to bring this lawsuit, Defendants would not have engaged in the retaliatory act of removing his special housing privilege. Accordingly, Plaintiff's allegations are sufficient at this stage to state a retaliation claim. The undersigned now turns toward determining the proper defendant in this case as Plaintiff seeks injunctive relief and no money damages.

Plaintiff seeks injunctive relief in the form of reinstating his special housing restriction and ensuring that TDCJ employees adhere to the restriction. Plaintiff's allegations indicate that Dr. Kwarteng had the authority to determine whether Plaintiff qualifies for a special housing restriction based on his medical condition. For purposes of obtaining injunctive relief, Dr. Kwarteng is the individual most likely able to fashion the relief Plaintiff is seeking. Because Dr. Kwarteng appears to be best person to implement the injunctive relief requested, the undersigned respectfully recommends that he remain in this case and that the Defendants Lawson and Miller be dismissed as to Plaintiff's retaliation claim.[2]

### B. ADA Claim

Plaintiff claims that his ADA rights were violated when the Defendants acted in their official capacities to interfered with and deny Plaintiff accommodations for his special housing needs. While Plaintiff did not separately name the TDCJ as a defendant,

---

[2] Should facts come to light as this case proceeds that another prison official at the McConnell Unit is the best person to implement Plaintiff's requested injunctive relief, the undersigned will substitute that person in place of Dr. Kwarteng.

it is the appropriate defendant for this type of claim. *See McCoy v. Tex. Dep't Crim. Justice*, No. C-05-370, 2006 WL 2331055 (S.D. Tex. Aug. 9, 2006). *See also Steele v. Thaler*, No. H-09-4076, 2011 WL 739524, at *2 (S.D. Tex. Feb. 22, 2011) (recognizing that plaintiffs cannot sue individual defendants under Title II of the ADA).

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). That is, by failing to accommodate for the disability of the disabled person, the defendant has effectivity discriminated against the person. *Tennessee v. Lane,* 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA.

Plaintiff alleges that he suffers from a physical disability involving his ability to use his arms and hands, that he was provided with a special housing restriction in 2013 as a reasonable accommodation for his physical disability, that Defendants violated this special housing restriction on many occasions starting in 2018, and that his special housing restriction was removed in November 2019.  Plaintiff's allegations suggest that Defendants' actions in ignoring the special housing restriction and then removing it altogether caused Plaintiff unnecessary harm or punishment.  Taken as true, Plaintiff has sufficiently stated an ADA claim at this early stage in the proceedings. Accordingly, the undersigned recommends retaining Plaintiff's ADA claim against the TDCJ.

## V.     CONCLUSION

The M&R issued on January 24, 2020 is **AMENDED** to include the following additional recommendations: (1) Plaintiff's retaliation claim be **RETAINED** against **Dr. Kwarteng** in his official capacity for injunctive relief only; (2) Plaintiff's ADA claim be retained against the **TDCJ**; and (3) Plaintiff's claims against the remaining defendants be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

The undersigned will order service as to **Dr. Kwarteng** and the **TDCJ** by separate order.  The undersigned **VACATES** the portion of the M&R recommending that the dismissal of this case count as a strike under 28 U.S.C. § 1915(g).

Respectfully submitted this 11th day of August 2020.

                                                Jason B. Libby
                                   United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).