Case 2:19-cv-00323   Document 39   Filed on 01/07/21 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
January 07, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JAMES SCHORSCH, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:19-CV-323 |
| § | |
| ISAAC KWARTENG, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DENY TDCJ'S MOTION TO DISMISS**

Plaintiff James Schorsch, an inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action. Plaintiff asserts claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A). Pending before the Court is a Motion to Dismiss filed by Defendant Texas Department of Criminal Justice (TDCJ). (D.E. 35). For the reasons stated herein, it is respectfully recommended that the Court deny this motion.

**I.   JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently confined at the McConnell Unit in Beeville, Texas. Plaintiff's allegations arise in connection with his current housing assignment.

Plaintiff originally sued the following McConnell Unit officials in this action: (1) Assistant Warden Gene Miller; (2) Warden Richardson; (3) Assistant Warden Daniel Fernandez; and (4) Senior Practice Manager Tanya Lawson. (D.E. 1, 5). Plaintiff claimed that Defendants' failure to enforce his special medical housing restriction constituted deliberate indifference to his health and safety in violation of Plaintiff's Eighth Amendment rights. Plaintiff sought injunctive relief in the form of preventing prison officials from violating his "prescribed medical housing."

The undersigned conducted a *Spears*[1] hearing on December 11, 2019. In a Memorandum and Recommendation issued on January 24, 2020 (M&R), the undersigned construed Plaintiff's Eighth Amendment claim as a "failure to protect' claim and recommended that Plaintiff's complaint be dismissed with prejudice for failure to state a claim for relief and/or as frivolous. (D.E. 12, pp. 6-9).

Plaintiff filed objections to the M&R, reiterating that prison officials at the McConnell Unit have continuously violated his special housing restriction since his

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

arrival at the unit on January 30, 2018, by placing in his cell general population inmates with no handicap conditions. (D.E. 14, p. 2). Plaintiff further stated that, since the day of the *Spears* hearing, his special housing restriction has been removed. (D.E. 14, p. 4). Plaintiff primarily objected to the undersigned's characterization of his claim as a "failure to protect" claim. (D.E. 14, p. 4). He argued instead that his deliberate indifference claim "is about the intentional interference with a prescribed special medical housing restriction." (D.E. 14, pp. 4-6).

On April 1, 2020, United States District Judge Nelva Gonzales Ramos issued an order directing Plaintiff to file an amended complaint so that he could present additional facts to support the deliberate indifference claim he seeks to raise. (D.E. 16). Plaintiff filed his amended complaint on May 4, 2020, in which he also raised retaliation and ADA claims. (D.E. 19). Plaintiff named as defendants in his amended complaint Assistant Warden Miller, Practice Manager Lawson, and Dr. Kwarteng. Plaintiff seeks injunctive relief in the form of reinstating his special housing restriction and ensuring that TDCJ employees adhere to the restriction.

The undersigned conducted a second *Spears* hearing on June 10, 2020. In an Amended Memorandum and Recommendation (AM&R) issued on August 11, 2020, the undersigned recommended that: (1) Plaintiff's retaliation claim be retained against Dr. Kwarteng in his official capacity for injunctive relief only; (2) Plaintiff's ADA claim be retained against TDCJ; and (3) Plaintiff's claims against the remaining defendants be dismissed with prejudice for failure to state a claim and/or as frivolous. (D.E. 24). The

undersigned ordered service of Plaintiff's complaint and amended complaint on Dr. Kwarteng and TDCJ. (D.E. 25).

On September 29, 2020, Judge Ramos adopted the AM&R. (D.E. 34). On October 26, 2020, TDCJ filed a Motion to Dismiss. (D.E. 35). Plaintiff subsequently filed his response to TDCJ's motion. (D.E. 38).

### III. PLAINTIFF'S ALLEGATIONS

The following representations relevant to Plaintiff's ADA claim against TDCJ were made either in Plaintiff's amended complaint (D.E. 19) or at the *Spears* hearing: Plaintiff has ulnar nerve damage to both hands and arms. Plaintiff's condition has caused his fingers to atrophy, and he has muscle damage in his hands. Plaintiff is only able to use two fingers and his thumbs. Plaintiff's disability impacts his ability to shake hands or grasp an object. (D.E. 21, p. 3). Plaintiff, however, can feed himself and brush his teeth. Plaintiff is fully mobile and has no conditions affecting his lower extremities.

Due to his condition, Plaintiff was given a medical restriction in 2013, which required him to be placed in special housing with those inmates having similar medical conditions. In 2013, pursuant to Program Statement 4.01, a doctor provided Plaintiff with a "Special housing needs" restriction which was intended to prevent him from being housed with general population inmates who do not have "like medical disabilities." (D.E. 19-1, p. 1; D.E. 21, pp. 5-6).

From the time Plaintiff arrived at the McConnell Unit in January 2018, the security staff frequently placed inmates without like medical disabilities in Plaintiff's cell. (D.E. 21, pp. 5-6, 16). On October 31, 2019, Dr. Kwarteng called Plaintiff to the infirmary. (D.E. 21, p. 15). Dr. Kwarteng told Plaintiff that, due to the filing of complaints against him and other prison officials, Plaintiff's special housing restriction would be removed. (D.E. 21, p. 15). Plaintiff's special housing restriction was subsequently removed.

Plaintiff has physical impairments and is substantially limited with respect to his physical capabilities. According to Plaintiff, Defendants acted in their official capacity by interfering with or denying Plaintiff accommodations for his special housing needs. Plaintiff believes he benefits by being eligible for special housing due to his disability. When asked at the *Spears* hearing how he would benefit from having the "special housing needs restriction" in place, Plaintiff indicated that he was frustrated by having "something different" when he had been in a cell for so long by himself. (D.E. 21, p. 8).

## IV.   LEGAL STANDARD

TDCJ moves to dismiss Plaintiff's ADA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 35). This rule provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## V. DISCUSSION

Plaintiff claims that his ADA rights were violated when prison officials at the McConnell Unit interfered with and denied Plaintiff accommodations for his special housing needs. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To establish a valid claim under Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn*

6 / 11

*v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997). Intentional discrimination is required in order to recover compensatory damages under the ADA. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). That is, by failing to accommodate for the disability of the disabled person, the defendant has effectivity discriminated against the person. *Tennessee v. Lane,* 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA).

TDCJ contends in its Motion to Dismiss that Plaintiff has failed to state that he is a person with a qualifying disability under the ADA. (D.E. 35, pp. 4-5). TDCJ further contends that Plaintiff has not stated facts indicating that he has been denied a reasonable

accommodation for any qualifying disability. (D.E. 35, pp. 5-6). Lastly, TDCJ contends that Plaintiff has alleged no facts to suggest he was intentionally discriminated against due to his disability. (D.E. 35, p. 7).

Plaintiff responds that he was perceived as having a qualifying disability when he was accommodated with a special housing restriction. (D.E. 38, p. 2). By removing that special housing restriction, Plaintiff contends that TDCJ has now failed to accommodate his disability and intentionally discriminated against him as a result. (D.E. 38, p. 2).

On the issue of whether Plaintiff is a "qualified individual with a disability," the ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12101(2). "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeking, hearing, breathing, learning, and working." *Hamilton v. SW. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (citing 29 C.F.R § 1630.2(i)).

Plaintiff alleges that: (1) he has ulnar nerve damage to both hands and arms; (2) his condition has caused his fingers to atrophy; (3) he has muscle damage in his hands and is only able to use two fingers and his thumbs; and (4) Plaintiff's disability impacts his ability to shake hands or grasp an object. (D.E. 21, p. 3). While he acknowledges that he can feed himself and brush his teeth, Plaintiff's allegations suggest that his physical impairment substantially limits him in the performance of major life activities such as manual tasks. Thus, when accepting his allegations as true, Plaintiff plausibly states that he is a qualified individual with a disability under the ADA.

The undersigned next considers whether Plaintiff's allegations show he was denied a reasonable accommodation for his disability. The ADA "imposes an obligation to provide reasonable accommodations for specific limitations imposed by the claimant's disability." *Garza v. City of Donna*, No. 7:16-CV-558, 2017 WL 2861456, at *7 (S.D. Tex. July 5, 2017). "[T]he ADA requires [entities] to reasonably accommodate limitations, not disabilities." *Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 216 (5th Cir. 2015). Furthermore, "[t]he ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012).

Plaintiff alleges that: (1) he was provided with a special housing restriction in 2013 where he would be housed with inmates having similar physical issues; (2) Defendants nevertheless violated the special housing restriction on many occasions starting in 2018 by placing inmates in his cell who did not share similar physical limitations; and (3) Plaintiff's special housing restriction was ultimately removed in November 2019. TDCJ argues that Plaintiff's allegations fail to show how the special housing restriction at issue actually accommodated the limitations to his hand dexterity caused by his disability. (D.E. 35, p. 6).

Accepting Plaintiff's allegations as true, they suggest that prison officials originally provided Plaintiff with a special housing accommodation in 2013 based on his physical limitations caused by his qualifying disability. Plaintiff's allegations regarding the actions of Defendants, leading to the eventual removal of the special housing

restriction, indicate that he is being subjected to discrimination based on the denial of a reasonable accommodation for such limitations. *See Wright v. Texas Dept. of Criminal Justice*, No. 7:13-CV-0116, 2013 WL 6578994, at *4 (N.D. Tex. Dec. 16, 2013) (finding that prisoner stated an ADA claim based on allegations that he was denied a reasonable accommodation for his serious mental illness by not being housed with other people or in a safe cell).

Because Plaintiff has alleged sufficient facts to state a plausible ADA claim, TDCJ's Motion to Dismiss (D.E. 35) should be denied.

## VI.   RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that TDCJ's Motion to Dismiss (D.E. 35) be **DENIED** in all respects.

Respectfully submitted this 7th day of January 2021.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).