United States District Court
Southern District of Texas
**ENTERED**
September 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES SCHORSCH, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-323 |
| | § | |
| GENE MILLER, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER ADOPTING MEMORANDUM AND RECOMMENDATION
# TO DENY TDCJ'S MOTION TO DISMISS

Plaintiff James Schorsch, an inmate appearing pro se and *in forma pauperis*, filed this action, which has been construed to assert a claim under 42 U.S.C. § 1983 against Defendant Isaac Kwarteng for retaliation and a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A) against Defendant Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ). TDCJ filed a motion to dismiss (D.E. 35), to which Schorsch responded (D.E. 38). On December 7, 2021, United States Magistrate Judge Jason B. Libby issued a Memorandum and Recommendation (M&R), recommending that the Court deny TDCJ's motion to dismiss in all respects. D.E. 39.

Pending before the Court are TDCJ's objections to the M&R. D.E. 42. In its six objections, TDCJ challenges the Magistrate Judge's conclusions that Schorsch adequately pled each of the three elements of the ADA claim. For reasons described below, the Court

1

**OVERRULES** the objections and **ADOPTS** the findings and conclusions of the Magistrate Judge.[1]

### Standard of Review

The district court conducts a de novo review of any part of the Magistrate Judge's disposition that has been properly objected to. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). As to any portion for which no objection is filed, a district court reviews for clearly erroneous factual findings and conclusions of law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

### Discussion

As set out in the M&R, to allege an ADA claim, the plaintiff must plead: (1) he has a qualifying disability; (2) the defendant, a public entity, denied him public services; and (3) the denial was discriminatory on the basis of the plaintiff's disability. D.E. 39, pp. 6–7. The Court evaluates TDCJ's challenges to each of these elements in turn.

**I. Qualified Disability**

In its first objection, TDCJ argues that Schorsch's physical impairment—ulnar nerve damage that has weakened his arms and leaves him with the use of only his thumbs and two fingers—does not qualify as a disability because he has learned to compensate, and the damage does not substantially impact any major life activities. D.E. 42, pp. 1–3.

---

[1] In a seventh objection, TDCJ objects to separate orders entered by the Magistrate Judge requiring that it file an answer prior to final resolution of its motion to dismiss and setting certain case-preparation deadlines. D.E. 42, pp. 6–7 (objecting to D.E. 40, 41). TDCJ has since filed its answer (D.E. 45) and has proceeded with discovery. *See, e.g.*, D.E. 50, 64, 66, 67. Consequently, the Court **OVERRULES** TDCJ's seventh objection as moot.

In its reasoning, TDCJ relies on Schorsch's testimony as to what he can do. TDCJ argues that he confesses sufficient abilities as to necessarily negate his pleading of disabilities.

**Broad Definition of Disability.** What qualifies as a disability under the ADA is broadly construed. 42 U.S.C. § 12102(4)(A).[2] The ADA, as recognized in the M&R, defines disability as a physical impairment that substantially limits one or more major life activities, such as caring for oneself, performing manual tasks, and working. D.E. 39, p. 8 (citing 42 U.S.C. § 12101(2); then citing 29 C.F.R. § 1630.2). The ADA does not explain what degree of impairment "substantially limits" these activities, but regulations stress that this phrase must be broadly construed. 29 C.F.R. § 1630.2(j)(1)(i).[3]

TDCJ's authority, cited in support of this objection, is not good law. TDCJ relies on the strict construction of the phrase "substantially limits" in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002), which Congress explicitly rejected when enacting the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, § 2(b)(4)–(5), 122 Stat. 3553, 3553; D.E. 42, p. 2.[4] Therefore, an impairment

---

[2] "The definition of disability . . . shall be construed in favor of broad coverage . . . ." 42 U.S.C. § 12102(4)(A).

[3] "The term 'substantially limits' shall be construed broadly in favor of expansive coverage . . . [and] is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

[4] Congress stated its purposes in enacting the ADAAA explicitly to include the following:
> (4) to reject the standards enunciated by the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), that the terms "substantially" and "major" in the definition of disability under the ADA "need to be interpreted strictly to create a demanding standard for qualifying as disabled," and that to be substantially limited in performing a major life activity under the ADA "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives"; [and]
>
> (5) to convey congressional intent that the standard created by the Supreme Court in the case of Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) for "substantially limits", and applied by lower courts in numerous decisions, has created an inappropriately high level of limitation necessary to obtain coverage under the ADA, to convey that it is the intent of Congress that

that "substantially limits" a major life activity need only reduce one's ability to perform a major life activity as compared to the general population. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590–91 (5th Cir. 2016).

With the use of two fingers and his thumbs, Schorsch alleges he does not have "normal physical capabilities" and remains unable to perform manual tasks as compared to the general population. D.E. 21, p. 4. Schorsch alleges his impairment also impacts his daily abilities to shake hands, grasp an object, play ball, "or just do[] ordinary things that have to be done." D.E. 21, p. 3. He indicates that his condition makes him vulnerable to the risk of violence posed by others in the general prison population, such that a housing assignment that puts him in the same cell with an inmate who does not have similar vulnerabilities places him at a substantial disadvantage. D.E. 21, p. 10 ("It's like you're putting a lion and a lamb in there together. The lion's going to eat the lamb.").

**Relevance of Mitigating Measures.** TDCJ also points to how Schorsch has adapted to the symptoms of his ulnar nerve damage. The ADAAA explicitly states that the "substantially limits" inquiry should be made "without regard to the ameliorative effects of mitigating measures," such as "learned behavioral . . . modifications." 42 U.S.C. § 12101(4)(E)(i). Instead, courts should consider impairments in their "unmitigated state." *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 670–71 (4th Cir. 2019);

---

the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.

ADAAA, § 2(b)(4)–(5).

4

*Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 862 (9th Cir. 2009).

While Schorsch described how he has adapted over the years in order to feed himself and brush his teeth, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(i)(1)(i). Moreover, TDCJ has not shown that Schorsch has been able to mitigate his vulnerability to the actions of others. Schorsch thus adequately pleads how his physical impairment substantially limits a major life activity as required by Rule 12(b)(6). Consequently, the Court **OVERRULES** TDCJ's first objection.

## II. Denial of Reasonable Accommodation

In its second and third objections, TDCJ argues that (a) special housing would not directly address Schorsch's manual strength and dexterity and thus is not a reasonable accommodation, and (b) a medical restriction associated with housing does not qualify as a public program that is subject to the ADA.

TDCJ's analysis of the reasonable accommodation prong is narrow, selecting portions of Schorsch's complaints in an effort to pigeon-hole him into a theory inconsistent with the ADA. D.E. 42, pp. 3–5. That is contrary to the Rule 12(b)(6) standard of review, as set out fully in the M&R. D.E. 39, pp. 5–6. Allegations that do not neatly fit into the theory do not necessarily negate the theory. In fact, parties may plead inconsistent theories. Fed. R. Civ. P. 8(d)(3). It is only when an affirmatively asserted fact necessarily defeats the claim that the case must be dismissed under Rule 12(b)(6). *E.g.*, *Jones v. Bock*, 549

U.S. 199, 215 (2007) (finding a claim defeated under Rule 12 if the plaintiff pleads events with dates that affirmatively show that the claim is barred by limitations).

**Reasonable Accommodation**. As the M&R states, "Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person." D.E. 39, p. 7 (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004)). Reasonable accommodations give "meaningful access to the benefit that the grantee offers" without posing an undue burden. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). TDCJ does not argue that the requested accommodation would impose an undue burden, so the issue is whether the housing is a reasonable accommodation.

TDCJ argues that Schorsch fails to allege how being housed by himself or with similarly disabled inmates might accommodate his limitations. D.E. 42, p. 4. Here, TDCJ focuses on there being no connection between the housing and Schorsch's ability to perform manual tasks, stating that "nothing in the Memorandum explains how being housed with an offender with similar disabilities is an accommodation of the limitation." D.E. 42, p. 4. TDCJ's approach is contrary to the Rule 12(b)(6) standard of review.

Schorsch alleges that without this accommodation, his impairment limits his capabilities relative to another prisoner in the cell. D.E. 21, p. 10. Schorsch never says that the accommodation will help him perform manual tasks. D.E. 42, p. 4. Rather, Schorsch complains in his first *Spears* hearing that he wanted the accommodation for safety concerns. D.E. 29, pp. 13–14, 24. Although he initially denies safety concerns in his

subsequent hearing, he eventually indicates that safety was, and remains, one of the reasons for his request. D.E. 21, p. 10.

TDCJ cites to case law to support the argument that it has no obligation to provide a "desired accommodation" or "an inmate's preference." D.E. 42, p. 4. In *Cadena v. El Paso County*, the Fifth Circuit did state that "The County is not required to acquiesce to Cadena's choice of accommodations merely because Cadena requested them." However, it continued, "But it is required to provide her with reasonable accommodations that give 'meaningful access to the benefit that the grantee offers' without posing an undue burden to the County." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 725 (5th Cir. 2020) (citing *Alexander*, 469 U.S. at 301). In addition to acknowledging that he desires or prefers the accommodation, Schorsch identifies how the accommodation may give him meaningful access to the benefits of TDCJ's housing. D.E. 21, p. 10; D.E. 29, pp. 13–14, 24.

Schorsch therefore sufficiently pleads the second prong of his ADA claim. The second objection is **OVERRULED**.

**Service, Program, or Activity.** In its third objection, TDCJ argues that the housing accommodation Schorsch seeks is a medical restriction that is not a "service, program, or activity" under the ADA. D.E. 42, p. 5 (citing *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012)). However, in the prison context, housing is a program or service under the ADA. *Epley v. Gonzalez*, No. 19-10781, 2021 WL 2351155, at *4 (5th Cir. June 8, 2021); *Atomanczyk v. Tex. Dep't of Crim. Just.*, No. 4:17-CV-00719, 2021 WL 2915030, at *7 (S.D. Tex. July 12, 2021).

TDCJ's reliance on *Nottingham* is misplaced. In that case, the Fifth Circuit stated that the ADA is not violated merely because a prison failed to attend to a disabled prisoner's medical needs. 499 F. App'x at 377 (flu and thrush were temporary conditions that did not qualify as ADA disabilities). While the plaintiff had limited walking abilities, had fallen to the van's floor as a result of his flu and thrush symptoms, and was left there even after the guards stopped for a break, the court held that he had not alleged that any part of the way he was treated was based on discrimination for his walking limitations. *Id.* Thus, there was no connection between the disability and any alleged discrimination. *Id.*

Unlike in *Nottingham*, Schorsch does not merely restate negligent medical care claims as ADA claims. Instead, Schorsch requests a housing situation that "accommodates people with disabilities, allowing them equal access to a program or service—here, safe housing—despite their disabilities." *Epley*, 2021 WL 2351155, at *4 (internal citations and quotations omitted). An ADA claim may be based on the denial of reasonable housing accommodations that do not "treat the underlying medical conditions that require their existence." *Id.* ("Being housed in a single-occupancy cell might mitigate Epley's . . . symptoms, but it in no way cures him or eliminates his ailments."). Schorsch's claim should not fail simply because the accommodation sought is ordinarily termed a "medical restriction" in the TDCJ environment. *Cf.* D.E. 42, p. 5. The fact that the accommodation sought is ordinarily termed a "medical restriction" in the TDCJ environment does not mean that it is an issue relegated to the deliberate indifference analysis under the Eighth Amendment rather than an ADA reasonable accommodation issue.

The Court rejects the argument that the requested accommodation is merely a medical service, which would not implicate the ADA. The Court consequently **OVERRULES** TDCJ's third objection.

### III. Discrimination on the Basis of Disability

**Intentional Discrimination.** TDCJ's fourth objection, which is asserted in a sub-heading, states that Schorsch "has failed to show intentional discrimination." D.E. 42, p. 5. But a showing of intentional discrimination is only required to support a request for compensatory damages, which is not at issue here.[5] *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002). Schorsch requests only injunctive relief (D.E. 19, p. 4), and the M&R does not suggest that he has stated a claim for compensatory damages. TDCJ's fourth objection is **OVERRULED** as moot.

**By Reason of His Disability.** TDCJ's fifth objection is to the M&R's conclusion that Schorsch states sufficient facts to "support the claim that TDCJ denied him reasonable accommodation . . . *by reason of his disability*." D.E. 42, p. 5 (citing *Hay v. Thaler*, 470 F. App'x 411, 417 (5th Cir. 2012) (per curiam)). TDCJ argues that the M&R conflates prongs two and three of the ADA requirements. D.E. 42, p. 6.

Prong three of the ADA analysis can be shown by Schorsch explaining "how his alleged disabilities made it more difficult for him to access the benefits of TDCJ's services . . . or gave him less meaningful access to those services." *Hay*, 470 F. App'x at 418.

---

[5] While Schorsch is not required to plead intentional discrimination in order to be entitled to injunctive relief, he has also alleged facts that could form the basis of a retaliation claim under the ADA. *Perez v. Brooks Cnty.*, No. 19-cv-391, 2020 WL 4261253, at *7 (S.D. Tex. July 24, 2020). Schorsch states that he spoke with Assistant Warden Gene Miller, who informed Schorsch that he does not care about Schorsch's disability, no judge is going to tell him how to run his prison, and Schorsch will lose the housing restriction because he filed this lawsuit. D.E. 21, p. 21–23.

Schorsch describes how his lack of upper-limb dexterity makes it more difficult for him to meaningfully access safe housing within the prison context. D.E. 21, p. 10; D.E. 29, pp. 13–14, 24. This is sufficient to plead that he is denied safe housing because of his disability.

Furthermore, TDCJ originally provided the housing accommodation Schorsch seeks, based on his limited hand dexterity. D.E. 39, p. 9. This fact lends plausibility to the connection between how Schorsch's disability impacts his access to the benefits of TDCJ's housing service, making the denial of a reasonable accommodation a matter of disability discrimination. D.E. 39, p. 9.

Schorsch has alleged a nexus between his disability and TDCJ's failure to provide his housing accommodation. Consequently, the Court **OVERRULES** TDCJ's fifth objection.

**Identity of Discriminating Party.** In a sixth objection, TDCJ argues that Schorsch fails to identify TDCJ's role in the denial of his housing accommodation. D.E. 42, p. 6. But, as the M&R points out, Schorsch's ADA claim does not solely concern Dr. Kwarteng's recent withdrawal of the housing restriction. D.E. 39, p. 9. Rather, Schorsch points to multiple instances when TDCJ employees (and not Dr. Isaac Kwarteng) denied or attempted to deny Plaintiff's housing request. *E.g.*, D.E. 38-1, p. 2; D.E. 21, pp.26–27.

While TDCJ attempts to shift attention to University of Texas Medical Branch (UTMB) employees (such as Dr. Kwarteng), a public entity cannot contract away liability under Title II. 28 C.F.R. § 35.130(b)(1)(i); *D.B. v. CorrectHealth E. Baton Rouge, LLC*, No. 19-620-JWD-EWD, 2020 WL 4507320, at *20 (M.D. La. August 5, 2020); D.E. 42,

p. 6. The Department of Justice published guidance clarifying how Title II applies in the context of correctional facilities and their contractors:

> It has consistently been the Department's position that Title II requirements apply to correctional facilities . . . irrespective of whether the public entity contracts with another public or private entity to build or run the correctional facility. The power to incarcerate citizens rests with the State or local government . . . . Moreover, even if the State enters into a contractual, licensing, or other arrangement for correctional services with a public entity that has its own Title II obligations, the State is still responsible for ensuring that the other public entity complies with Title II in providing these services.

28 CFR § 35, app. A at 645 (2010).

Schorsch sufficiently alleges that TDCJ—and not just Dr. Kwarteng (UTMB employee)—made it more difficult for him to meaningfully access the specified housing service. Consequently, the Court **OVERRULES** TDCJ's sixth objection.

## Conclusion

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's M&R, as well as TDCJ's objections, and all other relevant documents in the record, and having made a de novo disposition of the portions of the Magistrate Judge's M&R to which objections were specifically directed, the Court **OVERRULES** TDCJ's objections and **ADOPTS** the findings and conclusions of the Magistrate Judge. Accordingly, TDCJ's motion to dismiss (D.E. 42) is **DENIED**.

ORDERED this 10th day of September, 2021.

                                                     NELVA GONZALES RAMOS
                                                     UNITED STATES DISTRICT JUDGE